# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| A FAMILY CHOICE CDS, LLC, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CAUSE NO. 4:22-cv-00112 |
| | § | |
| MBP BARCELONA, LLC, | § | |
| Defendant. | § | |

## PLAINTIFF'S AMENDED MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

TABLE OF CONTENTS ......................................................................................................... i

TABLE OF AUTHORITIES ................................................................................................... ii

I.    INTRODUCTION ..................................................................................................... 1

II.   BACKGROUND FACTS .......................................................................................... 1

III.  ARGUMENT ............................................................................................................ 9

   A.   There Is a Substantial Likelihood That Family Choice Will Prevail on the Merits. .............. 10

     1.   There Is a Substantial Likelihood That Family Choice Will Prevail on Its Claims Under 42 U.S.C. § 3604(f)(1). ........................................................................................... 10

     2.   There Is a Substantial Likelihood That Family Choice Will Prevail on Its Claims Under 42 U.S.C. § 3604(f)(3). ........................................................................................... 12

     3.   There is a Substantial Likelihood that Family Choice Will Prevail on Its Claims Under 42 U.S.C. § 3617 ........................................................................................................ 14

   B.   There Is a Substantial Threat That Family Choice and the Residents It Serves Will Suffer Immediate Irreparable Injury If the Injunction Is Not Granted. .................................... 15

   C.   The Threatened Harm to Family Choice and the Residents It Serves Outweighs the Threatened Harm the Injunction May Cause Defendant MBP. ........................................ 17

   D.   The Granting of a Preliminary Injunction Will Not Disserve the Public Interest. ................. 18

IV.   CONCLUSION ....................................................................................................... 19

# TABLE OF AUTHORITIES

**Cases**

*Ainsworth v. Wells Fargo Home Mortg., Inc.*,
2018 U.S. Dist. LEXIS 116295 (N.D. Tex. June 21, 2018)…………………….……………15

*Alliance for the Wild Rockies v. Cottrell*,
632 F.3d 1127 (9th Cir. 2011)…………………………………………………………………...16

*Association of Taxicab Operators, USA v. City of Dallas*,
760 F. Supp. 693 (N.D. Tex. 2010)………………………………………………………....…10

*Barron v. City of Granite City*,
2019 U.S. Dist. LEXIS 175406 (S.D. Ill. Oct. 9, 2019)………………………………………16

*Blue Bell Creameries, L.P. v. Denali Co., LLC*,
2008 WL 2965655 (S.D. Tex. July 31, 2008)…………………………………………………18

*Caron Found. of Fla., Inc. v. City of Delray Beach*,
879 F. Supp. 2d 1353 (S.D. Fla. 2012)………………………………………………………..19

*Clark v. Prichard*,
812 F.2d 991 (5th Cir. 1987)…………………………………………………..……………9

*Cox v. Phase III, Invs.*,
2013 U.S. Dist. LEXIS 85725 (S.D. Tex. May 14, 2013)………………………………………15

*Diamond House of SE Idaho, LLC v. City of Ammon*,
381 F. Supp. 3d 1262 (D. Idaho 2019)…………………………………………...…..16, 18

*Enyart v. National Conference of Bar Examiners, Inc.*,
630 F.3d 1153 (9th Cir. 2011)…………………………………………………………………...18

*Gonzalez v. Recht Family P'ship*,
51 F. Supp. 3d 989 (S.D. Cal. 2014)……………………………………………………………19

*Janvey v, Alguire*,
647 F.3d 585 (5th Cir. 2011)……………………………………….…………….…………..9

*Jefferson Community Health Care Centers, Incorporated, v. Jefferson Parish Gov't*,
849 F.3d 615 (5th Cir. 2017)……………………………………………………….…………..9

*Johnson v. U.S. Dep't of Agric.*,
734 F.2d 774 (11th Cir. 1984)…………………………………………………………...16

*Lakedreams v. Taylor*,
932 F.2d 1103 (5th Cir. 1991)……………………………………..……………...9

*Lancor v. Lebanon Housing Auth.*,
760 F.2d 361 (1st Cir. 1985)……………………………………………………..18

*McNeil v. N.Y.C. Housing Auth.*,
719 F. Supp. 233 (S.D.N.Y. 1989)…………………………………….…………...16

*Meyer v. Holley*,
537 U.S. 280 (2003)……………………………………………………………..18

*Oxford House, Inc. v. City of Baton Rouge*,
932 F. Supp. 2d 683 (M.D. La. 2013)……………………………………………15

*Ozkay v. Equity Wave Lending*,
2020 U.S. Dist. LEXIS 260928 (N.D. Cal. Nov. 25, 2020)……………………………16

*Productos Carnic S.A. v. Central American Beef and Seafood Trading Co.*,
621 F.2d 683 (5th Cir. 1980)…………………………………..……………………9

*Ruffner v. Quality Loan Serv. Corp. of Wash.*,
2020 U.S. Dist. LEXIS 30109 (D. Or. Feb. 18, 2020)…………………………………16

*Schwartz v. City of Treasure Island*,
544 F.3d 1201 (11th Cir. 2008)…………………………………………………10

*State of Texas v. Seatrain Int'l, S.A.*,
518 F.2d 175 (5th Cir. 1975)………………………………………….……….………9

*Step by Step, Inc. v. City of Ogdensburg*,
176 F. Supp. 3d 112 (N.D.N.Y. 2016)…………………………………………..18

*Terry v. Inocencio*,
2014 U.S. Dist. LEXIS 133457 (N.D. Tex. Sept. 2, 2014)………………………………14

*United States v. Air Park-Dallas Zoning Comm.*,
2009 U.S. Dist. LEXIS 150678 (E.D. Tex. June 29, 2009)……………………………..19

*United States v. Edward Rose & Sons*,
384 F.3d 258 (6th Cir. 2004)……………………………………………………18

*U.S. v. Hialeah Housing Authority*,
418 Fed. Appx. 872 (11th Cir. 2011)…………………………………………………12

*United States v. Rupp*,
2021 U.S. Dist. LEXIS 101006 (E.D. Mo. May 28, 2021)…………………………………………18

**Statutes, Rules, and Regulations**

24 C.F.R. § 100.201(b)……………………………………………………………………………..11

42 U.S.C. § 3602(b)………………………………………………………………………………...10

42 U.S.C. § 3602(h)………………………………………………………………………………...10

42 U.S.C. § 3604(f)(1)…………………………………...…………………………………...…10, 12

42 U.S.C. § 3604(f)(3)(B)…………………………………………………………………………12

42 U.S.C. § 3617………………………………………………………………………………14

42 U.S.C. § 12101(3)……………………………………………………………………………18

Fed. R. Civ. P. 65(a)………………………………………………………………………………1

Fed. R. Civ. P. 65(b)………………………………………..…….…………………………………1

Tex. Prop. Code § 92.056……………………………………………….…….……………………9

Tex. Prop. Code § 92.0563………………………………………….…….………………………..9

## I.     INTRODUCTION

Plaintiff A Family Choice CDS, LLC ("Plaintiff" or "Family Choice") hereby moves the

Court, pursuant to the provisions of Rule 65(a) and (b) of the Federal Rules of Civil Procedure,

for a Temporary Restraining Order and Preliminary Injunction, enjoining Defendant MBP

Barcelona, LLC ("Defendant" or "MBP") and any and all of MBP's officers, agents, servants,

employees, and attorneys, and any and all persons in active concert or participation with them,

from (1) evicting Family Choice or its residents or failing to renew their leases for retaliatory

reasons, (2) failing to allow Family Choice or its residents access to the premises leased by them,

(3) refusing to perform repairs or maintenance required by the lease agreement or the Texas

Property Code for retaliatory reasons or otherwise seeking the constructive eviction of Family

Choice and the residents it serves, or (4) otherwise interfering with the equal enjoyment of

Family Choice residents of the housing of their choice.

## II.     BACKGROUND FACTS

Family Choice is a provider of services to individuals with disabilities of all ages who

require such services to live in the community and thus to have the opportunity to reside in an

integrated community setting.  Plaintiff's Amended Verified Complaint ("AVC"), ¶ 18.

Specifically, Family Choice has a contract with the Texas Health and Human Services

Commission ("HHSC") pursuant to which it provides such services.  *Id*.; Exh. B.  Family Choice

specializes in the provision of services to individuals and children with intellectual disabilities or

mental illness, many of whom also exhibit challenging behaviors.  AVC, ¶ 18.  HHSC has done

inspections of Family Choice's operations and the residences it leases and has given its approval.

*Id*.

Many of the residents served by Family Choice have been referred by the Child

Protective Services Division of the Texas Department of Family & Protective Services ("CPS")

with which Family Choice also has contractual arrangements.  AVC, ¶ 19; *see also, e.g.*, Exh. C.
Some of the residents referred in this manner have behavioral issues that arise from and
constitute manifestations of their respective disabilities.  AVC, ¶ 19.  Despite the fact that the
residents at issue have attendant care provided to them, along with behavioral management
services, one or another of them will on occasion have an emotional outburst.  *Id.*  For example,
children with emotional disabilities may sometimes express suicidal ideation which may in turn
require the involvement of law enforcement to ensure the safety of the child and of those
working with the child.  *Id.*  While the involvement of law enforcement on such occasions may
appear troubling to an outside observer, it is a feature that occasionally arises in the context of
the integration of such an individual into the wider community.  *Id.*

Family Choice leases fourteen units from the Barcelona Apartments in Fort Worth,
Texas, operated by Defendant MBP Barcelona, LLC.  AVC, ¶ 20.  Family Choice places two
residents in each unit, who are supervised by a 24-hour caregiver, with other caregivers and live-
in supervisors nearby in the same complex.  *Id.*  Every resident served by Family Choice has a
level of disability sufficient to warrant service under the Texas Home and Community Based
Services ("HCS") Medicaid waiver program administered by HHSC.  *Id.*  Some have autism,
some have intellectual disabilities, and others have emotional disabilities or some combination of
these conditions.  *Id.*  Their disabilities severely compromise at a minimum their ability to care
for themselves, to learn, and to work.  *Id.*  Children at high risk of particularly problematic
behaviors are always attended with a 1 to 1 ratio of staff to resident.  *Id.*  Such ratios ensure that
the residents are safe at all times and that any behavioral manifestations of their respective
disabilities are kept under control, even if that occasionally means notifying emergency services
in event of an especially problematic set of circumstances.  *Id.*

Although residents served by Family Choice have occasionally had emotional outbursts while residing in the Barcelona Apartments, such as vocalizing suicidal ideation and the like, Family Choice has followed appropriate steps in addressing such behaviors.  AVC, ¶ 21.  On the rare occasions in which residents have caused minor damage to property in the units, Family Choice has taken the responsibility for repairing any such damage or replacing any property at issue.  *Id*.  Family Choice has never left it to Defendant to make such repairs or provide any other remedy in this regard.  *Id*.

Family Choice has leased apartments in this manner at the Barcelona Apartments complex since July 2020.  AVC, ¶ 22.  It never had any difficulty with the management of the Barcelona Apartments until recently.  *Id*.  In fact, Defendant's management company had understood and approved the operation of Family Choice at the apartments from the start, and the Barcelona Apartments renewed the leases held by Family Choice on July 23, 2021.  *Id*.; Exh. D.

However, a change in property management at the Barcelona Apartments around that same time in the summer of 2021 has brought a change in approach as well.  AVC, ¶ 23.  In recent months, the  Barcelona management has made clear that it does not wish Family Choice to continue to lease apartments there and does not wish the disabled residents served by Family Choice to continue to reside there.  *Id*.  The management has pointed to the fact that, for example, Fort Worth police have on various occasions been called to help in resolving situations of suicidal threats or assaults by residents on Family Choice staff.  *Id*.  In no cases, however, have residents served by Family Choice assaulted or injured others outside of Family Choice or damaged any property of others.  *Id*.  While Family Choice residents occasionally did minor damage to their apartments, Family Choice always immediately repaired any such damage.  *Id*.

On December 13, 2021, Defendant MBP Barcelona, LLC, owner of the Barcelona Apartments, gave Family Choice a Notice to Vacate for Non-Delinquency Breach of Lease or Unauthorized Holdover.  AVC, ¶ 24; Exh. E.  It required Family Choice and all of the residents it serves to vacate their residences based on events allegedly occurring throughout the entire time period of Family Choice's tenancy there, despite the fact that, as noted above, Defendant had renewed Family Choice's lease there in July 2021.  AVC, ¶ 24; Exh. E.  Defendant cited police reports from this time period, despite the fact that any police activity involving Family Choice residents arose from incidents in which the residents at issue were (a) working through behavioral manifestations of their respective disabilities, and (b) did nothing to harm other residents of the Barcelona Apartments or Defendant or its staff in any way.  AVC, ¶ 24; Exh. E. In fact, all of the incidents specifically cited by Defendant MBP in the eviction notice occurred prior to the lease renewal the previous summer.  Exh. E (referencing as grounds for eviction incidents allegedly occurring on April 8, 2020; August 30, 2020; September 12, 2020; November 20, 2020; December 1, 2020; January 16, 2021; February 10, 2021; July 7, 2021; and July 18, 2021; all of which occurred prior to the execution of the lease renewal on July 23, 2021). *Compare* Exh. D and Exh. E.  Furthermore, the majority of the Family Choice residents subject to the eviction notice had never been involved in any of the incidents referenced in the police reports or in any behavior disruptive to the Barcelona Apartments or its management.  AVC, ¶ 24.  Each unit is separately leased with its own lease contract and many have had no allegations of any kind attached to them.  *Id*.  One unit was vacant for eight months due to mold, but Family Choice continued to pay the rent.  *Id*.  Nevertheless, Defendant gave Family Choice and its residents until February 18, 2022, to vacate the premises, offering the same basis for each unit. *Id*.  The residents served by Family Choice have, in most cases, no alternative housing available

4

to them and no alternative service provider available to provide them the full level of assistance that they require and that Family Choice provides. *Id*. Losing their home and their care provider would cause them severe difficulties. *Id*.

On December 21, 2021, an incident occurred with a thirteen year-old intellectually disabled resident placed with Family Choice by CPS. AVC, ¶ 25. The resident damaged the ceiling fan and made some holes in the walls. *Id*. Family Choice immediately repaired this minor damage. *Id*. However, while the resident was out, Barcelona management changed the locks on the door of the resident's apartment and refused him re-entry when he came back, despite the fact that all of his property was in the apartment, including the medications he needed for his health and safety. *Id*. Ultimately, Defendant threw out the personal belongings, while continuing to refuse access and while continuing to charge rent for the unit. *Id*. On information and belief, Defendant's conduct was based on an extension of the same discriminatory approach that led to the eviction notices the week before. *Id*. Defendant has compounded this discriminatory approach by refusing to address work orders, major or minor, in any of the units, even with respect to standard maintenance issues. *Id*.

Defendant has had both actual and constructive awareness of the fact that the residents served by Family Choice are persons with disabilities and that their behaviors are manifestations of those disabilities. AVC, ¶ 26. In fact, Plaintiff Family Choice has repeatedly given Defendant and its agents notice of that fact. *Id*. For example, Family Choice has on multiple occasions requested special accommodations, such as grouping the residents it serves together, but has been refused such accommodations. *Id*. Nevertheless, Defendant ostensibly seeks to evict both Family Choice and all the residents served by Family Choice on the basis of purported violations of a provision in the applicable leases that prohibits "behaving in a loud or obnoxious manner" or

"disturbing or threatening the rights, comfort, health, safety, or convenience of others (including our agents and employees) in or near the apartment community[.]" *Id.* To the extent that the conduct of any resident served by Family Choice could be characterized as meeting these descriptions, such conduct is not by any means applicable to all or even most of the residents and in any event would have arisen only in a particular set of circumstances in which an individual resident was manifesting features of his or her disability. *Id.* An accommodation deeming this contractual provision inapplicable to the behaviors at issue is both reasonable and necessary. *Id.* It is reasonable because Defendant would suffer no undue hardship and would have to make no fundamental alteration in its operations by granting it. *Id.* It is necessary because, without such an accommodation, the residents served by Family Choice cannot have the equal opportunity to use and to enjoy the housing of their choice. *Id.*

Because Defendant sought to evict Family Choice and all the residents it serves based on the conduct of a few residents that have had emotional outbursts that do no more than manifest their disabilities and because Defendant had engaged in other discriminatory conduct also based on the disabilities of Family Choice residents, Plaintiff sought judicial intervention from this Court in the form of an order temporarily and then permanently enjoining Defendant from evicting Family Choice or its residents, from denying Family Choice or its residents access to the premises leased by them, or from otherwise interfering with the equal enjoyment of Family Choice residents of the housing of their choice. AVC, ¶ 27. Plaintiff filed its Original Verified Complaint and its motion for injunctive relief simultaneously on February 14, 2022. *Id.*

When Defendant agreed not to evict Family Choice and the residents it serves unless and until this Court issued a ruling permitting such action, the parties advised the Court that a hearing on Plaintiff's motion for temporary restraining order would not be immediately necessary. AVC,

6

¶ 28.  However, since that point, Defendant has sought to force out Plaintiff and the residents it serves through a retaliatory campaign of constructive eviction.  *Id*.  Defendant has refused to address routine maintenance issues at the apartments leased by Family Choice for months at a time, despite repeated requests that they do so, up to and including leaving holes and leaks in ceilings as well as air conditioning units unrepaired, with mold flourishing and intolerable heat issues as a result, and the like.  *Id*.  None of these repair requests resulted from any outbursts or other problematic actions by Family Choice or any of the residents it serves.  *Id*.  For example, a major leak in the bathroom of Apartment 1425 has not been repaired as of the date of this filing, despite requests for such repair dating as early as May 1, 2022—over a month and a half ago.  *Id*. There is no electricity in Apartment 1322, despite requests for repair of the electrical system dating as early as May 18, 2022—over a month ago.  *Id*.  Half of the electrical sockets do not work  and none of the overhead lights function, so the residents have had to move into another apartment.  *Id*.  Defendant has not fixed the air conditioning in Apartments 1322 and 1628, despite requests for repair of the relevant units more than 3.5 months ago (Apartment 1628) and more than a month ago (Apartment 1322) respectively, despite multiple further requests thereafter, and despite the fact that Texas has been swept with record heat waves.  *Id*.  *See, e.g.*, "How long will Texas have to endure the heat? 100-degree days in the forecast for Forth Worth," June 18, 2022, Fort Worth Star-Telegram, available at star-telegram.com/news/weather-news/article262574797.html (last reviewed on June 18, 2022).  Defendant has repeatedly ignored the requests for maintenance, despite the fact that it was its obligation to address such requests. AVC, ¶ 28.  The situation has deteriorated to such a degree that HHSC has threatened to terminate its contract with Family Choice if it does not have the problems rectified.  *Id*. Furthermore, although Family Choice finally regained access in May 2022, Defendant refused to

allow it access to one of the apartments it leases for months, despite the fact that Family Choice has continued to pay the rent. *Id*. Even when Family Choice finally regained access, the maintenance crew took two doors from the apartment which it has not replaced to this day, despite requests to address this issue. *Id*. Together these actions threaten to force Family Choice and the residents it serves to leave the housing of their choice—the apartments in which they currently reside, which are operated by Defendant. *Id*. Defendant's wrongful retaliatory conduct constitutes a breach of its lease agreement, which, among other things, requires Defendant to "act with customary diligence to make repairs . . . ." AVC, ¶ 29.

Defendant has also refused to renew the leases for Family Choice and the residents it serves, having provided notice that the existing leases will expire at various dates between July 26, 2022, and September 30, 2022, and that all residents must move out upon expiration of the applicable leases. AVC, ¶ 30. *See also* Exh. G. Defendant generally renews leases of its residents automatically. AVC, ¶ 30. Its determination not to renew the leases for Family Choice and the residents it serves, particularly in the factual context detailed in this Amended Verified Complaint, constitutes intentional discrimination and a conscious effort to deprive Family Choice and the residents it serves from enjoying and using the housing of their choice as a result of their disabilities and the manifestations arising from those disabilities. *Id*.

In light of the continued wrongful conduct of Defendant, Family Choice continues to seek injunctive relief in the form of a temporary restraining order, a preliminary injunction, and finally a permanent injunction both to prevent Defendant from wrongfully evicting Family Choice and the residents it serves, to prevent Defendant from continuing its campaign of constructive eviction, and to prevent Defendant from refusing to renew the leases set to expire in July, August, or September of 2022. AVC, ¶ 31. Furthermore, Family Choice seeks any and all

8

remedies available to it pursuant to Tex. Prop. Code § 92.056 and § 92.0563.  *Id*.  Family Choice has complied with the notice requirements of these provisions of the Texas Property Code.  *Id*.

## III.    ARGUMENT

To prevail in a motion for a temporary restraining order ("TRO") or a preliminary injunction, Plaintiff must show (1) a substantial likelihood that it will prevail on the merits; (2) a substantial threat that irreparable harm will result if the injunction is not granted; (3) that the threatened injury outweighs the threatened harm to Defendant; and (4) that the granting of the preliminary injunction will not disserve the public interest.  *See Janvey v, Alguire*, 647 F.3d 585, 595 (5th Cir. 2011) (preliminary injunction); *Lakedreams v. Taylor*, 932 F.2d 1103, 1107 (5th Cir. 1991) (same); *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987) (preliminary injunction or temporary restraining order).

Plaintiff need not necessarily satisfy each of these factors to the same degree.  Rather, a court must use a balancing-type approach in reviewing a preliminary injunction or TRO application.  *State of Texas v. Seatrain Int'l, S.A.*, 518 F.2d 175, 180 (5th Cir. 1975).  When analyzing the degree of "success on the merits" necessary to justify injunctive relief, the Fifth Circuit employs a sliding scale that involves balancing the hardships associated with the issuance or denial of a preliminary injunction with the degree of likelihood of success on the merits.  *See Productos Carnic S.A. v. Central American Beef and Seafood Trading Co.*, 621 F.2d 683, 686 (5th Cir. 1980).  Indeed, a showing of even some likelihood of success will justify preliminary injunctive relief.  *See, e.g.*, *Jefferson Community Health Care Centers, Incorporated, v. Jefferson Parish Gov't*, 849 F.3d 615, 626 (5th Cir. 2017) ("Though there is no particular degree of likelihood of success that is required in every case, the party seeking a preliminary injunction must establish at least some likelihood of success on the merits before the court may proceed to

assess the remaining requirements."); *Association of Taxicab Operators, USA v. City of Dallas*, 760 F. Supp. 693, 696 (N.D. Tex. 2010) ("Even some likelihood of success can be enough to support the issuance of a preliminary injunction.").  In this case, Plaintiff has met all the factors necessary for this Court to issue a temporary restraining order and then a preliminary injunction.

**A.      There Is a Substantial Likelihood That Family Choice Will Prevail on the Merits.**

**1.      There Is a Substantial Likelihood That Family Choice Will Prevail on Its Claims Under 42 U.S.C. § 3604(f)(1).**

Pursuant to 42 U.S.C. § 3604(f)(1), it is unlawful "[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of—(A) that buyer or renter, (B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or (C) any person associated with that buyer or renter.  Defendant violated this statutory provision.

As an initial matter, the apartments leased by Family Choice from MBP constitute dwellings for purposes of the FHA.  *See* 42 U.S.C. § 3602(b) (defining "dwelling" as "any building, structure, or portion thereof which is occupied as, or designed or intended for occupancy as, a residence by one or more families, and any vacant land which is offered for sale or lease for the construction or location thereon of any such building, structure, or portion thereof."); *Schwartz v. City of Treasure Island*, 544 F.3d 1201, 1213-4 (11th Cir. 2008) (explaining expansive scope of the term "dwelling" for purposes of the FHA).

Moreover, the residents served by Family Choice are uniformly disabled.  The Fair Housing Act defines a "handicap" or disability as "(1) a physical or mental impairment which substantially limits one or more of [the] person's major life activities, (2) a record of having such an impairment, or (3) being regarded as having such an impairment."  42 U.S.C. § 3602(h).  Major life activities include, for example, "function such as caring for one's self, performing

manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 24 C.F.R. § 100.201(b). All the residents served by Family Choice at the Barcelona Apartments meet these criteria.

Family Choice serves primarily those who qualify for the HCS waiver program operated by HHSC. The HCS waiver program serves exclusively "Texans with an intellectual disability (ID) or a related condition so that they can live in the community." Exh. F.[1] Each of the residents served by Family Choice who reside at the Barcelona Apartments has a physical or mental impairment that substantially limits, at a minimum, their ability to care for themselves, to learn, and to work. *See* Section II above.

Furthermore, Defendant has made the apartments leased by Family Choice unavailable to Family Choice and the residents that it serves because of their disability. Based on emotional outbursts that (1) have arisen entirely as manifestations of the disabilities of the residents at issue, (2) have not been exhibited by most of the residents at issue, (3) have caused no injury to Defendant, Defendant's staff, or any other resident of or visitor to the Barcelona Apartments, and (4) have caused no significant damage to property and no property damage at all that was not promptly repaired by Family Choice, Defendant MBP (1) gave notice of eviction to Family Choice and all of the residents it serves, (2) locked one resident out and threw away his belongings, (3) embarked on a campaign of constructive eviction, refusing to respond to requests for maintenance and the like, such that apartments leased by Family Choice have no air conditioning in the midst of a catastrophic heat wave, have no electricity, have leaks and mold, and/or suffer from other similar deficiencies that render them effectively uninhabitable. *See*

---

[1] Available at https://www.hhs.texas.gov/sites/default/files/documents/doing-business-with-hhs/providers/long-term-care/hcs/what-is-hcs.pdf (last reviewed July 7, 2022).

Section II above.  This wrongful conduct fits squarely within the ambit of 42 U.S.C.

§ 3604(f)(1).

> ## 2. There Is a Substantial Likelihood That Family Choice Will Prevail on Its Claims Under 42 U.S.C. § 3604(f)(3).

Pursuant to 42 U.S.C. § 3604(f)(3)(B), it is an impermissible form of discrimination for a

housing provider to refuse "to make reasonable accommodations in rules, policies, practices, or

services, when such accommodations may be necessary to afford such person equal opportunity

to use and enjoy a dwelling . . . ."

A housing provider's obligation to make reasonable accommodations under this statutory

provision are triggered when the plaintiff has provided the housing provider sufficient

information "to know of both the disability and desire for an accommodation, or circumstances

must at least be sufficient for a reasonable [defendant] to make appropriate inquiries about the

possible need for an accommodation."  *U.S. v. Hialeah Housing Authority*, 418 Fed. Appx. 872,

876 (11th Cir. 2011).

As discussed in Section II above, Defendant MBP gave Family Choice and all the

residents it serves notice of eviction effective on February 18, 2022, based entirely on a citation

to a lease provision in the applicable leases that prohibits "behaving in a loud or obnoxious

manner" or "disturbing or threatening the rights, comfort, health, safety, or convenience of others

(including our agents and employees) in or near the apartment community[.]"  Most of the

residents served by Family Choice at the Barcelona Apartments have had no allegations

concerning them that they have engaged in any conduct that could even loosely be construed as

falling within the ambit of these provisions.  With respect to any residents that have had

emotional outbursts that could conceivably be construed as rendering this provision applicable,

Plaintiff seeks a reasonable accommodation from Defendant that would not allow the use of this

provision as a basis for eviction where (1) the behavior at issue arose as a manifestation of the disability of the resident at issue, (2) no harm was inflicted on any member of Defendant's staff or any resident of or visitor to the Barcelona Apartments, and (3) any minor property damage to the resident's own apartment or its furnishings was repaired by Plaintiff itself.

Such an accommodation is reasonable because it imposes no burden, financial or otherwise, on Defendant MBP. Family Choice has operated in the Barcelona Apartments since July 2020. Defendant renewed its lease in July 2021. Nothing has changed in the manner of operation of Family Choice since that time. Only the management of the Barcelona Apartments has changed, and the approach adopted by that new management is both unreasonable and violative of federal law.

The requested accommodation is necessary as well because, to the extent that Defendant MBP evicts Family Choice and all the residents it serves because of alleged incidents involving a few of those residents, it is taking this action merely because of the association of Family Choice and its residents with individuals with disabilities. Even to the extent that Defendant MBP were only evicting residents who had some connection with the incidents at issue, it would be evicting them for behavioral manifestations of their disabilities and thus turning them away from the housing of their choice based on their disabilities, despite the fact that even these individuals have caused Defendant no injury.

Defendant's efforts at the constructive eviction of Family Choice and the residents it serves constitutes the same sort of rejection of Plaintiff's reasonable accommodation request as did its efforts at eviction through judicial process. After all, although the process differs, the motivations remain the same and the impact sought by Defendant remains the same. Defendant has now made yet another attempt at expelling Family Choice and the residents it serves through

13

a failure to renew the applicable leases—leases that would normally renew automatically.  All these efforts by Defendant are simply different mechanisms for denying the reasonable accommodations Family Choice and its residents seek.

### 3. There is a Substantial Likelihood that Family Choice Will Prevail on Its Claims Under 42 U.S.C. § 3617.

Under 42 U.S.C. § 3617, it is "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected  by section 3603, 3604, 3605, or 3606 of this title."  Family Choice will likely prevail in its claims under this provision.

Family Choice will likely prevail in its claims under 42 U.S.C. § 3617 because it can show that it engaged in the exercise or enjoyment of its rights protected by the Fair Housing Act, Defendant subjected it and its residents to an adverse action, and a causal connection exists between the exercise of the rights and the adverse action.  *See, e.g.*, *Terry v. Inocencio*, 2014 U.S. Dist. LEXIS 133457, *24-25 (N.D. Tex. Sept. 2, 2014) ("To assert a prima facie case of retaliation, a plaintiff must show (1) she engaged in the exercise or enjoyment of her rights protected by the FHA; (2) the defendant subjected her to an adverse action (coercion, threats, or interference); and (3) a causal connection exists between the protected activity and the adverse action").

Family Choice exercised its rights under the Fair Housing Act by initiating the litigation before this Court.  Family Choice and its residents suffered adverse action through the attempts at constructive eviction described in Section II above and ultimately through Defendant's determination not to renew the applicable leases for Family Choice and its residents.  The causal connection between these two events can be shown, among other things, because the protected

14

activity was followed closely in time by the adverse action. *See, e.g.*, *Cox v. Phase III, Invs.*, 2013 U.S. Dist. LEXIS 85725, *33 (S.D. Tex. May 14, 2013) ("To state a *prima facie* case for retaliation, a plaintiff must allege facts showing that (1) he engaged in an activity that [the FHA] protects' (2) he was subjected to an adverse [action by the defendant]; and (3) a causal connection exists between the protected activity and the adverse action. . . . The causation element can be established by circumstantial evidence by showing that the protected activity was closely followed by the adverse action.") (citations and internal quotation marks omitted). *See also Oxford House, Inc. v. City of Baton Rouge*, 932 F. Supp. 2d 683, 702 (M.D. La. 2013) ("As Oxford House correctly points out, the causal connection can be established indirectly by showing that the protected activity was closely followed in time by the adverse action.") (citation and internal quotation marks omitted). In this case, Plaintiff filed its Original Verified Complaint in this case on February 14, 2022. Almost immediately Defendant began its efforts at constructive eviction. *See* AVC, ¶ 28 (noting, for example, that Defendant has refused to make repairs to fix the air conditioning system at one apartment for about the last 3.5 months as of the date of this filing). Defendant has continued this pattern up through the time of this filing and has now coupled it with the refusal to renew the leases of Plaintiffs and the residents it serves.

**B.      There Is a Substantial Threat That Family Choice and the Residents It Serves Will Suffer Immediate Irreparable Injury If the Injunction Is Not Granted.**

Family Choice and the residents it serves will suffer irreparable injury if the injunctive relief they seek is not granted. Defendant MBP has attempted actively and constructively to evict them from their residences. Many of the residents served by Family Choice have no other homes to which they can go, if they are evicted from the Barcelona Apartments, and they would lose the benefits of the care and service provided by Family Choice. *See* Section II above. Loss of one's home constitutes irreparable harm. *See, e.g.*, *Ainsworth v. Wells Fargo Home Mortg.,*

*Inc.*, No. 3:18-cv-1343-M-BH, 2018 U.S. Dist. LEXIS 116295, *6 (N.D. Tex. June 21, 2018)

("[T]he loss of a home has been found to cause an irreparable injury."); *Johnson v. U.S. Dep't of*

*Agric.*, 734 F.2d 774, 789 (11th Cir. 1984) ("[I]rreparable injury is suffered when one is

wrongfully ejected from his home.  These plaintiffs suffer irreparably if they must live in

inadequate, often health endangering housing for any period of time as a consequence of a

wrongful ejectment."); *Ozkay v. Equity Wave Lending*, Case No. 20-cv-08263-JST, 2020 U.S.

Dist. LEXIS 260928, *6 (N.D. Cal. Nov. 25, 2020) ("Loss of one's home is generally consider to

satisfy [the irreparable harm element].") (citations and internal quotation marks omitted); *Barron*

*v. City of Granite City*, No. 19-cv-834-SMY-MAB, 2019 U.S. Dist. LEXIS 175406, *3 (S.D. Ill.

Oct. 9, 2019) ("Plaintiffs contend the potential loss of their home constitutes irreparable harm for

which there is no adequate remedy at law.  The Court [a]grees."); *McNeil v. N.Y.C. Housing*

*Auth.*, 719 F. Supp. 233, 254 (S.D.N.Y. 1989) ("The threat of eviction and the realistic prospect

of homelessness constitute a threat of irreparable injury . . . .").  *See also Diamond House of SE*

*Idaho, LLC v. City of Ammon*, 381 F. Supp. 3d 1262, 1278 (D. Idaho 2019) ("Congress

recognized housing discrimination creates irreparable injury when it empowered courts to grant

injunctive relief for violation of the statute.  42 U.S.C. § 3613(c)(1).")  In fact, the threat of loss

of housing is so severe that it can offset any perceived weakness in a plaintiff's likelihood of

success on the merits for purposes of preliminary injunctive relief.  *See, e.g.*, *Ruffner v. Quality*

*Loan Serv. Corp. of Wash.*, 2020 U.S. Dist. LEXIS 30109, *8 (D. Or. Feb. 18, 2020) ("The

severity of the harm that would result from the loss of Plaintiff's home may offset Plaintiff's

weaker showing of likelihood of success on the merits.") (citing *Alliance for the Wild Rockies v.*

*Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011)).

Furthermore, many of the residents served by Family Choice have been irreparably harmed already through Defendant's retaliatory actions and omissions and its efforts at constructive eviction.  As described in Section II above, numerous apartments leased by Family Choice and occupied by residents served by Family Choice were rendered uninhabitable because of faulty electrical and air conditioning systems and have not yet been repaired as of the date of this filing.  Plaintiff and the residents at issue do not merely face a threat of irreparable harm. They are experiencing that harm already.

Family Choice and the residents it serves will thus suffer immediate and irreparable injury if Plaintiff's requested injunction is not granted.

### C.     The Threatened Harm to Family Choice and the Residents It Serves Outweighs the Threatened Harm the Injunction May Cause Defendant MBP.

The requested injunction will not harm Defendant MBP at all, such that the irreparable harm that will befall Family Choice and the residents it serves necessarily carries greater weight.

None of the alleged conduct by residents served by Family Choice has caused MBP or any of its staff or any other Barcelona residents any harm.  As discussed above, residents served by Family Choice always have an attendant with them and other caregivers nearby so that any emotional outburst that occurs will have limited impact on the wider apartment community and its residents.  Any minor damage caused during the course of such outbursts is always immediately repaired by Family Choice.  No resident served by Family Choice has ever injured any other resident of or visitor to the Barcelona Apartments or any member of Defendant's staff. There thus is no threat of any harm to Defendant MBP if this Court grants Plaintiff's requested injunction.

The threat of harm to Family Choice and the residents it serves from the denial of the injunctive relief thus outweighs any conceivable burden to Defendant that its grant could cause.

*See, e.g.*, *Lancor v. Lebanon Housing Auth.*, 760 F.2d 361, 363 (1st Cir. 1985) ("Furthermore, we hold that the harm to appellant of imminent eviction from her home of eight years in the absence of injunctive relief outweighs the minimal harm to appellee . . . .")

**D.      The Granting of a Preliminary Injunction Will Not Disserve the Public Interest.**

Granting preliminary injunctive relief and a temporary restraining order requiring Defendant MBP to cease its discriminatory conduct would have no detrimental effect on the public.  After all, it is in the public interest to end the historically pervasive discrimination against the disabled, as Congress understood in enacting the Americans with Disabilities Act. *See, e.g.*, 42 U.S.C. § 12101(3) ("[D]iscrimination against individuals with disabilities persists in such critical areas as . . . housing . . . .")  Furthermore, courts have held that "the public interest is served whenever state and federal laws are enforced."  *See, e.g.*, *Blue Bell Creameries, L.P. v. Denali Co., LLC*, 2008 WL 2965655, *7 (S.D. Tex. July 31, 2008) (citing cases).  This is particularly true with respect to enforcement of civil rights statutes.  *See, e.g.*, *Enyart v. National Conference of Bar Examiners, Inc.*, 630 F.3d 1153, 1167 (9th Cir. 2011) ("In enacting the ADA, Congress demonstrated its view that the public has an interest in ensuring the eradication of discrimination on the basis of disabilities."); *United States v. Edward Rose & Sons*, 384 F.3d 258, 264 (6th Cir. 2004) ("Finally, on the public interest factor, the Supreme Court has found the FHA serves an 'overriding social priority.'") (quoting *Meyer v. Holley*, 537 U.S. 280, 290 (2003)); *United States v. Rupp*, No. 4:19-cv-02644-SEP, 2021 U.S. Dist. LEXIS 101006, *9 (E.D. Mo. May 28, 2021) ("[E]nforcement of the FHA serves the public interest . . . ."); *Diamond House of SE Idaho, LLC*, 381 F. Supp. 3d at 1279 ("[C]ourts have emphatically declared the public interest is served by effective enforcement of the  FHA."); *Step by Step, Inc. v. City of Ogdensburg*, 176 F. Supp. 3d 112, 135 (N.D.N.Y. 2016) ("The FHA was a clear pronouncement of a national commitment to end the unnecessary exclusion of persons with

handicaps from the American mainstream.") (citations and internal quotation marks omitted); *Gonzalez v. Recht Family P'ship*, 51 F. Supp. 3d 989, 992-3 (S.D. Cal. 2014) (holding that the plaintiff met the public interest requirement for a preliminary injunction where she established discrimination on the basis of disability because "the public interest has been authoritatively declared by Congress" in its enactment of the FHA) (citation omitted); *Caron Found. of Fla., Inc. v. City of Delray Beach*, 879 F. Supp. 2d 1353, 1374 (S.D. Fla. 2012) ("Through the FHA and ADA, Congress has declared that it is in the public interest to allow individuals with disabilities to live on an equal footing with the non-disabled.  Therefore, it is not against the public interest to enjoin discrimination against individuals with disabilities or those who provide housing and treatment services on their behalf."); *United States v. Air Park-Dallas Zoning Comm.*, No. 4:08-cv-142, 2009 U.S. Dist. LEXIS 150678, *13 (E.D. Tex. June 29, 2009) ("An injunction that prohibits discriminatory acts that violate the FHA will not disserve the public interest.")  The granting of a TRO and preliminary injunction will not disserve the public interest.

## IV.   CONCLUSION

In light of the foregoing, Plaintiff respectfully requests that this Court enter a temporary restraining order and preliminary injunction enjoining Defendant MBP Barcelona, LLC, and any and all of MBP's officers, agents, servants, employees, and attorneys, and any and all persons in active concert or participation with them, from (1) evicting Family Choice or its residents or failing to renew their leases for retaliatory reasons, (2) failing to allow Family Choice or its residents access to the premises leased by them, (3) refusing to perform repairs or maintenance required by the lease agreement or the Texas Property Code for retaliatory reasons or otherwise seeking the constructive eviction of Family Choice and the residents it serves, or (4) otherwise interfering with the equal enjoyment of Family Choice residents of the housing of their choice

19

DATED: July 11, 2022

Respectfully submitted,

s/ Mark Whitburn
Mark Whitburn
Texas Bar No. 24042144
Sean Pevsner
Texas Bar No. 24079130
Whitburn & Pevsner, PLLC
2000 E. Lamar Blvd., Suite 600
Arlington, Texas 76006
Tel: (817) 653-4547
Fax: (817) 653-4477
mwhitburn@whitburnpevsner.com

Attorneys for Plaintiffs

## CERTIFICATE OF CONFERENCE

I hereby certify that I conferred by telephone with counsel for Defendant, Kenneth Grubbs, on June 29, 2022, by email on July 5, 2022, and again by email on July 7, 2022, regarding the relief requested in the foregoing Motion.  We were unable to come to an agreement with respect to that relief.

s/ Mark Whitburn
Mark Whitburn

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was served on July 11, 2022, on counsel of

record for Defendant through the electronic filing service as follows:

Kenneth E. Grubbs
Law Office of Kenneth Grubbs
8000 IH-10 West, Suite 740
San Antonio, Texas 78230

David D. Ritter
Ritter Spencer PLLC
15455 Dallas Parkway, Suite 160
Addison, Texas 75001

<u>s/ Mark Whitburn</u>
Mark Whitburn

21

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| **A FAMILY CHOICE CDS, LLC,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CAUSE NO. 4:22-cv-00112** |
| | § | |
| **MBP BARCELONA, LLC,** | § | |
| **Defendant.** | § | |
| | § | |

## ORDER GRANTING PLAINTIFF'S AMENDED MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

On this day came on to be considered Plaintiff's Amended Motion for Temporary Restraining Order and Preliminary Injunction (the "Motion"). After full consideration of any arguments and evidence presented by counsel, this Court finds that the Motion is meritorious with respect to its request for a Temporary Restraining Order and should be granted in that respect. In particular, the Court finds that Plaintiff has a substantial likelihood of prevailing on its claims, that the balance of harms favors granting a Temporary Restraining Order, and that the public will not be disserved by the grant of a Temporary Restraining Order. The Court also finds that Plaintiff faces the prospect of irreparable harm in the absence of a grant of a Temporary Restraining Order not merely because of the substantial likelihood of Defendant's continuing violation of the applicable federal civil rights statutes, but also because the residents Plaintiff serves face the prospect of loss of the housing of their choice, whether through actual or constructive eviction. Therefore, the Motion is GRANTED with respect to its request for a Temporary Restraining Order. This Court will set the matter for a preliminary injunction hearing as appropriate.

Accordingly, it is ORDERED, ADJUDGED, and DECREED that Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction is hereby GRANTED with respect to

its request for a Temporary Restraining Order.  It is further ordered that Defendant MBP

Barcelona, LLC ("MBP") and any and all of MBP's officers, agents, servants, employees, and

attorneys, and any and all persons in active concert or participation with them, are hereby

enjoined until further order of this Court from (1) evicting Family Choice or its residents or

failing to renew their leases for retaliatory reasons, (2) failing to allow Family Choice or its

residents access to the premises leased by them, (3) refusing to perform repairs or maintenance

required by the lease agreement or the Texas Property Code for retaliatory reasons or otherwise

seeking the constructive eviction of Family Choice and the residents it serves, or (4) otherwise

interfering with the equal enjoyment of Family Choice residents of the housing of their choice.


DATED: _____                   _____
                                                JUDGE PRESIDING

2