UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| A FAMILY CHOICE CDS, LLC, | § | |
|               Plaintiff, | § | |
| | § | |
| v. | § | CAUSE NO. 4:22-cv-00112 |
| | § | |
| MBP BARCELONA, LLC, | § | |
|               Defendant. | § | |

**PLAINTIFF'S SUPPLEMENTAL BRIEFING REGARDING MOTION FOR
PRELIMINARY INJUNCTION**

Plaintiff A Family Choice CDS, LLC ("Family Choice") hereby submits its Supplemental Briefing Regarding Motion for Preliminary Injunction[1] and would respectfully show the Court as follows:

## I.     BACKGROUND FACTS[2]

Plaintiff filed its Original Verified Complaint (the "OVC," Dkt. No. 1) on February 14, 2022. As explained in the OVC, Defendant MBP Barcelona, LLC ("MBP"), the owner of the

---

[1] As explained further below, due to Defendant's refusal to renew expiring leases, Plaintiff has now had to move several residents out of the MBP Barcelona apartments and only has three residents currently residing there. Because the residents need to live in the same community, Plaintiff no longer seeks a preliminary injunction from this Court and will move the remaining residents to its new location. Plaintiff thus respectfully withdraws its Motion for Preliminary Injunction. It submits the brief below both to comply with this Court's order and to address several outstanding legal issues operative in this matter even in the absence of a request for preliminary injunctive relief.

[2] In its July 18, 2022 Order (Dkt. No. 37), this Court describes the ordered briefing as "supplemental briefing" and as "an amended brief." Plaintiff interprets the Order as indicating that Plaintiff should not repeat factual matters and arguments already put forward adequately in the prior briefing, but should supplement and/or amend as necessary. Consequently, Plaintiff does not here repeat facts and arguments already included in Plaintiff's Amended Motion for Temporary Restraining Order and Preliminary Injunction (the "Amended PI Motion," Dkt. No. 33). Rather, Plaintiff respectfully refers the Court back to that Motion for general factual background and supplements and amends here as necessary and appropriate. If Plaintiff has misunderstood this Court's July 18, 2022 Order, it stands ready to revise the brief to conform with this Court's guidance.

1

Barcelona Apartments, had, on December 13, 2021, given Family Choice a Notice to Vacate for Non-Delinquency Breach of Lease or Unauthorized Holdover. AVC, ¶ 24; Amended PI Motion, Exh. E.[3] All the incidents specifically cited by MBP in the eviction notice occurred prior to the lease renewal the previous summer on July 23, 2021. *Compare* Amended PI Motion, Exhs. D and E. When Defendant agreed not to evict Family Choice and the residents it serves unless and until this Court issued a ruling permitting such action, the parties advised the Court that a hearing on Plaintiff's motion for temporary restraining order would not be immediately necessary. AVC, ¶ 28. However, two new sets of factual circumstances have arisen since that point that led to Plaintiff's filing of an Amended PI Motion.

First, MBP began failing to do standard repairs and maintenance on the apartments leased by Family Choice. Initially, MBP reported air conditioning problems with Apartment 1628 as early as March 2022, immediately after having filed its Original Verified Complaint in February 2022. AVC, ¶ 28. By mid-May 2022, many more problems were arising with other apartments, and MBP was addressing neither the newer issues nor the problems with Apartment 1628. AVC, ¶ 28.

Second, MBP gave notice to Family Choice and its residents that the leases would not be renewed when they expired, thus instructing them that they needed to move out by the termination dates, ranging, according to MBP's ledger (Exhibit 1 to Exhibit B to Defendant's Response and Objection to Plaintiff's Motion for Temporary Restraining Order (the "Response

---

[3] As a Verified Complaint and thus as a sworn pleading, the AVC has evidentiary value. Because Plaintiff withdraws its request for preliminary injunctive relief, it does not rely here on the AVC as evidence and does not supplement the AVC with further evidentiary support at this juncture, but rather respectfully directs the Court to the AVC and other referenced material as sources for the factual assertions made. Plaintiff will provide a full evidentiary showing upon close of discovery or upon trial on the merits.

to Amended PI Motion," Dkt. No. 36)), from July 17, 2022, to September 30, 2022. AVC, at ¶ 30; Amended PI Motion, Exh. G.

Since then, again according to MBP's above-cited ledger, the leases of Apartments 511 (July 30, 2022), 822 (July 17, 2022), 823 (July 26, 2022), 1322 (July 26, 2022), and 1524 (July 30, 2022) have already terminated. *See also* Amended PI Motion, Exh. G. Consequently, Plaintiff has already had to move many of its residents out, must as a result move the rest of its residents out to keep them together in a community setting, and no longer seeks preliminary injunctive relief from this Court.

## II.     ISSUES ADDRESSED IN SUPPLEMENTAL BRIEFING

1. Whether A Family Choice CDS, LLC, has standing to assert claims under the Fair Housing Act, when it is not itself an individual with a disability, but it is rather an organization that provides services to individuals with disabilities.

2. Whether refusal to renew a lease due to discriminatory motives constitutes actionable wrongdoing under the Fair Housing Act.

3. Whether A Family Choice CDS, LLC, has made a *prima facie* case of discrimination and/or retaliation under the Fair Housing Act sufficient to trigger the *McDonnell Douglas* analytical framework.

## III.     ARGUMENT

**A.     Plaintiff Has Standing To Assert Its Fair Housing Act Claims.**

Plaintiff has standing to assert its claims in this matter. To "carry out the FHA's broad remedial purpose, Congress extended standing under the Act to the full extent allowed by Article III. The FHA does this by authorizing any person 'aggrieved' by a discriminatory act to bring suit to enforce the FHA. 42 U.S.C. § 3613. It then defines 'aggrieved person' as 'any person who . . . (1) claims to have been injured by a discriminatory housing practice; or believes that

3

such person will be injured by a discriminatory housing practice that is about to occur.' 42 U.S.C. § 3602." *Pinnacle Treatment Ctrs., Inc. v. City of Crown Point*, 2022 U.S. Dist. LEXIS 66436, *5 (N.D. Indiana April 11, 2022) (citations omitted).

The United States Supreme Court in *Gladstone Realtors, Inc. v. Village of Bellwood*, 441 U.S. 91, 103 n.9 (1979) (emphasis in original), explained that, with the Fair Housing Act, "Congress intended standing . . . to extend to the full limits of Art. III, [such that] the normal prudential rules do not apply; as long as the plaintiff suffers actual injury as a result of the defendant's conduct, he is permitted to prove that the rights of another were infringed. The central issue at this stage of the proceedings is not who possesses the legal rights protected by [the Fair Housing Act], but whether [Plaintiff was] genuinely injured by conduct that violates *someone's* [Fair Housing Act] rights, and thus are entitled to seek redress of that harm under [the Fair Housing Act]." *See also, e.g.*, *AHF Cmty. Dev. LLC. v. City of Dallas*, 633 F. Supp. 2d 287, 293 (N.D. Tex. 2009) ("Because Congress has abrogated prudential standing under the FHA, AHF may be able to establish its own standing based on the rights of its tenants to be free from unlawful discrimination.")

Here, there is no dispute that Defendant MBP Barcelona, LLC sought the eviction of not only Family Choice's residents, but Family Choice itself, from the apartments it has leased. There is no dispute that Defendant now refuses to renew the leases of the apartments Family Choice has leased. Family Choice has further presented evidence that Defendant has refused to do required repairs and maintenance in the apartments leased by Family Choice in an attempt to evict Family Choice and its residents constructively immediately after Family Choice initially asserted claims under the Fair Housing Act. Defendant may dispute that its motivations were discriminatory. It may not dispute, however, that Family Choice has adequately alleged injury

4

and qualifies as an "aggrieved person" or one who "claims to have been injured by a discriminatory housing practice" for purposes of 42 U.S.C. § 3602(i)(1).  Family Choice has standing.[4]

B.  **Refusal to Renew a Lease Due to Discriminatory Motivations Constitutes Actionable Wrongdoing under the Fair Housing Act.**

The failure to renew leases based on discriminatory grounds constitutes actionable conduct under the Fair Housing Act.  *See, e.g.*, *Hunt v. Aimco Props., L.P.*, 814 F.3d 1213, 1223-4 (11th Cir. 2016) (holding that a housing provider impermissibly made housing unavailable for purposes of the Fair Housing Act by "refusing to renew [the plaintiffs'] lease and directing them to vacate their apartment."); *Chavez v. Aber*, 122 F. Supp. 3d 581, 600 (W.D. Tex. 2015) (holding that "refusing to offer Plaintiffs a renewed lease on terms similar to non-disabled tenants in the complex" constituted actionable conduct under a Fair Housing Act retaliation claim).  Although as a usual matter, the determination not to lease or not to renew a lease would fall into the category of basic contract law, such a determination can constitute a violation of the Fair Housing Act or other civil rights laws when based on discriminatory motivations.  Thus, the issue becomes the framework within which such motivations are analyzed.  Plaintiff addresses this issue in Section II.C below.

C.  **Plaintiff Has Made a *Prima Facie* Case of Discrimination Sufficient To Trigger the *McDonnell Douglas* Analytical Framework.**

Plaintiff does not ask this Court through this litigation for a determination that an individual can reasonably pursue judicial intervention any time he or she can plausibly allege

---

[4] Plaintiff will respond separately to Defendant's Motion to Dismiss (Dkt. No. 39).  However, it is worth noting here that in arguing against Plaintiff's standing in that Motion, at 10-12, Defendant simply argues that it did not discriminate.  That argument goes to the merits and not to standing.  For purposes of a preliminary injunction motion Plaintiff must show a substantial likelihood of success on the merits.  Consequently, Plaintiff discusses this merits issue below.

membership in a protected category and does not have a lease renewed. On the contrary, the Fair Housing Act requires that the action have its basis either in a discriminatory motive for purposes of 42 U.S.C § 3604(f)(1) or § 3604(f)(2), in a failure to grant a reasonable accommodation for purposes of 42 U.S.C. § 3604(f)(3), or in a retaliatory motivation for purposes of 42 U.S.C. § 3617.

A court evaluating intentional discrimination claims under the Fair Housing Act should apply the *McDonnell Douglas* test. *See, e.g.*, *Hollis v. Chestnut Bend Homeowners Ass'n*, 760 F.3d 531, 539 (6th Cir. 2014) ("Because a disparate-treatment claim requires the plaintiff to establish discriminatory animus, analysis of such a claim focuses on the defendant's intent. . . . The court therefore applies the three-step *McDonnell Douglas* test, which shifts the burden of production from the plaintiff to the defendant and then back to the plaintiff in an effort to zero in on the specific intent underlying the defendant's conduct.") A court should apply this same framework to retaliation claims under the Fair Housing Act *See, e.g.*, *Avalon Residential Care Homes, Inc. v. City of Dallas*, 2011 U.S. Dist. LEXIS 105661, *23-25 (N.D. Tex. Sept. 19, 2011) (applying the *McDonnell Douglas* framework to analyze Fair Housing Act retaliation claims).

Pursuant to the *McDonnell Douglas* test, a plaintiff must first present a *prima facie* case for discrimination, which can be done in a retaliation case by showing "close timing between the protected activity and adverse action[.]" *Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 825, 835 (5th Cir. 2022) (internal quotation marks omitted). If it succeeds, the defendant must respond with a "legitimate, nondiscriminatory reason" for the action or omission at issue. *Id*., at 825. "Then, the burden shifts back to [the plaintiff], who must counter with substantial evidence that [the] proffered reason is pretextual." *Id*.

In connection with Plaintiff's retaliation claim under 42 U.S.C. § 3617, "[i]f a plaintiff makes a prima facie showing of retaliation, 'the burden of production shifts to the defendant to articulate a legitimate, non-retaliatory reason for the . . . action.'" *Avalon Residential Care Homes, Inc.*, 2011 U.S. Dist. LEXIS 105661, *23 (quoting *Long v. Eastfield Coll.*, 88 F.3d 300, 305 (5th Cir. 1996)). It is "relatively easy . . . for a plaintiff to establish a *prima facie* case." *Arbor Bend Villas Hous., L.P. v. Tarrant Cnty. Hous. Fin. Corp.*, 2005 WL 548104, *7 (N.D. Tex. Mar. 9, 2005). Here, as discussed in Section I above, MBP issued eviction notices based on events allegedly occurring before the renewal of the leases half a year earlier, the notices called for the eviction of all residents, whether they had anything to do with those prior events or not, Plaintiff asserted Fair Housing Act claim before this Court in February 2022, and Defendant immediately afterwards began to refuse to do necessary repairs and then refused to renew any leases. Plaintiff states a *prima facie* case not merely by virtue of the "close timing" between the initial Fair Housing Act claims and Defendant's adverse action, but also by the substance of Defendant's actions and omissions.

As Plaintiff has made the necessary showing for its *prima facie* discrimination and retaliation case, the burden shifts to Defendant to put forward a basis for its actions or omissions that is not discriminatory. MBP claims that Plaintiff's residents have broken the rules and references primarily the Declaration of its own employee who began work on May 23, 2022, well after many of the actions and omissions complained of took place. *See* Response to Amended PI Motion (Dkt. No. 36), Exh. B, at ¶ 2. This new employee makes vague allegations as follows: "It appears that from time-to-time different people, including teenagers, come and go from the units leased by Family Choice. During the day, I have found teenagers who I suspect to be Family Choice minor residents throwing rocks onto the sidewalk or in the park unsupervised.

7

At night, when I am not on the premises, there have been frequent police calls, which disturb the residents of the complex. Residents have complained about the teenagers from the Family Choice units being loud, playing loud music, and at times breaking into packages left on the doorsteps of the residents." Response to Amended PI Motion, Exh. B, at ¶¶ 6-7. While the parties will have the opportunity to present their respective evidentiary showings later in this litigation, Plaintiff notes for the present that (1) Defendant has so far based its allegations of rule-breaking, other than allegations about events that ostensibly occurred prior to the renewal of the leases in July 2021, on surmise and suspicions or on alleged complaints from other residents that conflict with the sworn affidavit of Family Choice's head supervisor, attached as Exhibit A, to the effect that (1) there have been seven supervising adults to six or fewer residents for the entire period during which MBP's employee has worked there, (2) the Family Choice residents are never left unsupervised, (3) the Family Choice residents never play loud music at MBP and are in bed by 7:30 pm, and (4) she has been made aware of no complaints on any issue from other residents of the complex. *See* July 28, 2022 Affidavit of Kizzie Edwards (attached as Exh. A). MBP has not given any indication as to whether it believes one particular resident has broken rules or all the residents collectively. It has given no specifics of any kind. Such vague allegations smack of the pretextual.

     Defendant has also sought to cast aspersions on Family Choice based on the financial framework of its contracts with the Texas Health and Human Services Commission and the Texas Department of Family and Protective Services. However, the very fact that these governmental agencies have entered into these contracts demonstrates the value they place on the services Family Choice provides. Furthermore, as demonstrated by the attached affidavit, the financial framework is critical to support a very high level of staff supervision of residents.

Plaintiff will present evidence concerning these issues later in this litigation. However, at present, Plaintiff notes that the financial arrangements of a services provider do not detract from the rights protected by the Fair Housing Act. The Fifth Circuit has expressly recognized the importance of organizations of this sort in that certain persons with disabilities are "not able to live safely and independently without organized, and sometimes, commercial, group homes…." *Groome Resources v. Parish of Jefferson, LA*, 234 F.3d 192, 202 (5th Cir. 2000); *see also Avalon Residential Care Homes, Inc. v. City of Dallas*, 130 F.Supp.2d 833, 841 (N.D. Tex. 2000) (holding that, under the FHA, both for-profit and not-for-profit commercial activities are authorized for group home protections).[5]

## IV.  CONCLUSION

In light of the foregoing, Plaintiff A Family Choice CDS, LLC, respectfully withdraws its request that this Court enter preliminary injunctive relief, but provides the above supplemental

---

[5] Defendant has also challenged Plaintiff's allegations regarding the disabilities of its residents. While Plaintiff will address this issue more fully in its Response to Defendant's Motion to Dismiss, it notes for present purposes that Defendant misconstrues applicable law. As an initial matter, courts have uniformly held that service providers for populations of individuals with disabilities qualify for protection under the Fair Housing Act, such that they need not prove as an individual matter the disability of every conceivable resident or prospective resident. *See, e.g.*, *Harmony Haus Westlake, L.L.C. v. Parkstone Property Owners Ass'n*, 851 Fed. Appx. 461, 464-5 (5th Cir. 2021) (citing cases and explaining that an evaluation of the disability status of future residents at a sober living residence requires an examination of the criteria used for their admission). Here, Family Choice has shown that, given its contracts with the Texas Health and Human Services Commission, the residents they serve would necessarily have disabilities. Furthermore, Defendant relies on a "strict" interpretation of the definition of disability based on *Carmona v. Southwest Airlines Co.*, 604 F.3d 848, 855-6 (5th Cir. 2010), and one case citing *Carmona* without recognizing that the Fifth Circuit in *Carmona* itself noted that such a "strict" interpretation was superseded by statute. *Id.*, at 855. The Americans with Disabilities Act in its current form dictates that the "definition of disability in this chapter shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter." 42 U.S.C. § 12102(4)(A). In fact, in its Findings and Purposes of Pub. L. 110-325 (the 2008 ADA Amendments Act), Congress expressly rejected the holdings of the Supreme Court cases cited in *Carmona* as the basis for its "strict" interpretation of disability.

9

briefing to clarify the legal foundations for its claims. Plaintiff will provide further support in this regard in responding to Defendant's Motion to Dismiss (Dkt. No. 39).

DATED: August 1, 2022

                                      Respectfully submitted,

                                      s/ Mark Whitburn
                                      Mark Whitburn
                                      Texas Bar No. 24042144
                                      Sean Pevsner
                                      Texas Bar No. 24079130
                                      Whitburn & Pevsner, PLLC
                                      2000 E. Lamar Blvd., Suite 600
                                      Arlington, Texas 76006
                                      Tel: (817) 653-4547
                                      Fax: (817) 653-4477
                                      mwhitburn@whitburnpevsner.com

                                      Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served on August 1, 2022, on counsel of record for Defendant through the electronic filing service as follows:

Kenneth E. Grubbs
Law Office of Kenneth Grubbs
8000 IH-10 West, Suite 740
San Antonio, Texas 78230

David D. Ritter
Ritter Spencer PLLC
15455 Dallas Parkway, Suite 160
Addison, Texas 75001

                                      s/ Mark Whitburn
                                      Mark Whitburn